UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT ADLER, | CASE NO. 1:11-cv-1915-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM |
| v. | |
| FERNANDO GONZALEZ, et al., | (ECF No. 1) |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

Plaintiff Brent Adler ("Plaintiff") is a state prisoner proceeding pro se in and forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 5.)

Plaintiff initiated this action on November 17, 2011. Plaintiff's Complaint is now before the Court for screening. (Compl., ECF No. 1.) No other parties have appeared.

I.      **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

-1-

raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

## II.  PLAINTIFF'S COMPLAINT

Plaintiff, currently housed at Centinela State Prison, was at California Correctional Institution ("CCI") at Tehachapi, California, when and where all of the events alleged in his Complaint occurred. Plaintiff is. (ECF No. 6.) Plaintiff brings claims for violation of his rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious and Land Use and Institutionalized Persons Act

("RLUIPA").[1] He brings this action against the following individuals: 1) F. Gonzalez, warden at CCI from November 2008 to December 2010, 2) M. Stainer, acting warden as of January 2011, 3) D. Zanchi, captain on Facility IV-A from 2008 to June 2009, 4) M. Bryant, captain of Facility IV-A from July 2009 to June 2010, 5) J. Lundy, current captain of Facility IV-A, 6) C. Schuyler, Facility IV-A lieutenant, 7) K. Holland, chief deputy warden, 8) M. Carrasco, associate warden and later associate warden of business services, 9) J. Negrete, associate warden in 2009, 10) T. Steadman, associate warden from 2010 to the present, 11) C. Holmstrom, appeals examiner of CDCR in 2010, and 12) John Does # 1-10, which includes correctional supervisors, officers, and state employees employed by CDCR.

Plaintiff's Complaint presents an extensive list of alleged restrictions placed on his ability to practice his Catholic religion. Other than referring to various orders and requests, he does not clearly nor succinctly outline facts showing what particular orders or actions by what particularly identifiable Defendants violated which particular rights. Therefore, the Complaint will be dismissed. However, Plaintiff will be given leave to amend. If he elects to amend, he should, as regards to each allegedly violated religious right, set forth **briefly** in simple language: who violated that right, how he or she violated that right, what reason was given for violating the right, when the rights were violated; and how Plaintiff was injured as a result. These allegations must include true facts, not speculation or opinion, satisfying all of the legal elements for his claims identified below.

Plaintiff's allegations include the following:

Plaintiff is Catholic. (Compl. at 3.) Plaintiff was incarcerated at CCI and transferred

---

[1] Plaintiff also alleges violation of the Civil Rights of Institutionalized Persons Act ("CRIPA"). However, CRIPA does not authorize a private right of action. See McRorie v. Shimoda, 795 F.2d 780, 782 n. 3 (9th Cir. 1986); Cooper v. Sumner, 672 F.Supp. 1361, 1367 (D.Nev. 1987).

from Facility IV-B to IV-A on November 5, 2008.  (Id. at 3-4.)  He was placed in Administrative Segregation ("Ad-Seg") due to lack of space.  (Id. at 4.)  Pursuant to CCI's operations manual, spiritual leaders are supposed to visit Ad-Seg inmates who request visits.  (Id.)  At various points in fall of 2008, and 2009 Plaintiff asked to attend chapel services and requested a Bible.  (Id. at 4-7.)  No one responded to any of these requests.  (Id.)  On December 5, 2008, Plaintiff was released from Ad-Seg.  (Id. at 5.)

Facility IV-A's general population was placed on modified programs many times pursuant to orders ("PSRs") issued by Lieutenant Bartelmie, Defendant Zanchi, Defendant Bryant, or Defendant Steadman and approved by Defendants Stainer, Gonzalez, or Holland. (Compl. 5-15).  The PSRs were issued for a variety of reasons, such as concerns about potential attacks on prison staff or gang violence.  (Id.)  Most or all of these PSRs resulted in inmates being restricted to "in-cell" religious services, even though Plaintiff and others of his race were not responsible for the events leading to the PSRs.  (Id.)  Some PSRs also restricted inmates' library use, thereby preventing Plaintiff from obtaining a Bible.  (Id. at 6.)  PSRs were issued on various dates from December 2008 to January 13, 2011.  (Id. at 5-16.)[2]

From June 2009 to December 2009, there was no chapel service on Facility IV-A, and religious services were only twice held on the yard.[3]  (Compl. at 8-9).  Plaintiff was

---

[2] It is unclear for how long the restrictions imposed by each PSR were in place.  On February 10, some restrictions were lifted and on February 23, 2010, Facility IV-A was returned to a normal program.  It is not clear from Plaintiff's allegations if inmates were continuously restricted to "in-cell" religious services from December 2008 to February 23, 2010 and then restricted again at some unknown date or if these restrictions started and stopped with each PSR. (Compl. at 11.)  On June 15, 2010, Facility IV-A was placed back on a normal schedule, but Plaintiff was unable to attend chapel services because of his conflicting work schedule. (Id. at 14.)

[3] Plaintiff does not explain what happened after December 2009, but says that he only attended the chapel twice in a two year time span. (Compl. at 16.)

unable to attend these services. (Id.) Defendants Schuyler, Bryant, and Does # 4-5 were responsible for programing and were aware that the chapel was not being properly run. (Id. at 9.) Defendants Gonzales, Holland, Carrasco, Negrete, Zanchi, and Bryant could have remedied the violations. (Id.)

While in Facility IV-A, Plaintiff only talked to the chaplain a few times and attended services once. (Compl. at 12-14.) The chaplain talked to Plaintiff on April 8, 2010. (Id. at 12.) The chaplain made brief tours of the facility on three days between April and July of 2010. (Id. 12-14.) Plaintiff had chapel access on July 8, 2010. (Id. at 14.)

In December 2008, due to a PSR, the library was only open for inmates with legal deadlines, which meant Plaintiff could not ask the library for a Bible. (Compl. at 6.) Plaintiff was able to receive a Bible in January 2009 after he was allowed to access the library for a legal deadline. (Id. at 7.) However, Plaintiff was out of the institution to attend court from May 19 to June 17, 2009. (Id. at 7.) When Plaintiff returned from court, he did not have his property and he asked for a Bible. (Id.) This request was ignored, and Plaintiff was only given a Bible thirty-five days later when his property was returned. (Id.)

Appeals protesting how religious needs were not met were reviewed by Defendants Zanchi, Carrasco, Holland, Gonzalez, and Does # 1-3. (Id. at 5.) These Facility IV-A correctional supervisors refused to remedy the problems. (Id.)

On December 13, 2009, Plaintiff submitted an appeal in connection with his inability to attend religious services. (Id. at 8.) His appeal was partially granted, but Defendants Bryant and Holland, the reviewers, mistakenly said that religious services had since been reinstated. (Id. at 10-11.)

The Mens Advisory Council ("MAC") tried to address the issues with the restrictions

on chapel access and religious services. (Compl. at 10.) The MAC discussed the issue with Defendants Gonzalez, Holland, Carrasco, Negrete, Zanchi, Bryant, Lundy, Schulyer, and Does # 1-5. (Id.) Plaintiff became chairman of the MAC in August 2009 . (Id. at 10.) As chairman of the MAC, Plaintiff tried to relax restrictions, but could not. (Id. at 10). October 25, 2010, as MAC chairman, Plaintiff met with Deputy Inspector Generals Fin and Flannigan, and told them about the religious issues. (Id. at 15.) From 2009 to 2010, Plaintiff, as part of the MAC, submitted proposals to Defendants Gonzalez, Holland, Carrasco, Steadman, Zanchi, Bryant, Lundy, Schulyer for less restrictive chapel schedules but the proposals were not considered. (Id. at 15.)

In the two years housed at Facility IV-A, Plaintiff was only allowed to attend Catholic services once. (Compl. at 16)

### III.   ANALYSIS

### A.   Section 1983

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

**B.    Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race, religion, or alienage. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Here, the orders at issue affected inmates of all religions. It does not appear Plaintiff intended to allege that Defendants' actions were directed to his membership in a protected class. If it was Plaintiff's intention to claim disparate treatment because of his religion or membership in some other protected class, he must clearly allege facts (not mere opinion or speculation) supporting such a claim. He will be given leave to do so if he chooses.

Plaintiff could make an equal protection claim under the second theory by showing that similarly situated individuals were intentionally treated differently without any rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated;

and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

In his claim against Defendants, Plaintiff has implicitly alleged that he is a member of identifiable class, i.e., a member of the Catholic religion. Plaintiff has not met the other two prerequisites of such a claim. Plaintiff has not alleged that he was intentionally treated differently from others similarly situated or that there was no rational basis for any of the treatment he received.

Plaintiff has failed to state a cognizable claim for violation of the Equal Protection Clause under either theory against Defendants. Plaintiff's claim shall be dismissed, but with leave to amend.

## B.   First Amendment

Plaintiff alleges that the failure to allow him to meet with the chaplain, visit the chapel, or immediately receive a Bible violated his First Amendment right to freedom of religion.

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979). Restrictions on access to "religious opportunities"-whether group services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put

-8-

forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Certainly, prisons are allowed to place a variety of restrictions on activities, including even religious worship, for security purposes and other legitimate penological reasons. See Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). However, denial of all access to religious worship opportunities can violate the First Amendment. Id.

Plaintiff has alleged that there were restrictions placed on his ability to practice his religion. Plaintiff has alleged that the "in-cell" religious services proposed by the prison were not sufficient for his purposes because the chaplain rarely came to his housing unit. He claims that no reasonable alternatives were provided.. However, he has not explained whether he can allege the above, Turner factors required for a First Amended claim.

Plaintiff's allegations actually suggest that there were valid and rational connections between the restrictions placed on Plaintiff's ability to practice his religion and government interests in institutional security. Plaintiff has made conclusory allegations that the PSRs should not have applied to him or his race and therefore were not narrowly tailored. This is not enough. Plaintiff must set forth facts demonstrating that these restrictions were not based on the government's interest in institutional security. Plaintiff has not alleged whether assertion of his constitutional rights would have a significant impact on guards or

other inmates. If Plaintiff chooses to file an amended complaint, he must explain whether his requested rights would impact guards and other inmates in light of CCI's concerns about institutional security. He should also explain if and how there were alternative means of protecting security.

Plaintiff has not stated a cognizable First Amendment claim. He will be given leave to amend. If he chooses to amend, Plaintiff, must allege facts that would satisfy all four prongs of a First Amendment claim based on religion.

### C.  RLUPIA

Plaintiff also makes a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1). Plaintiff bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). A "substantial burden" is one that is "oppressive to a significantly great extent." Id. at 995 (internal quotations omitted). It "must impose a significantly great restriction or onus upon [religious] exercise." Id. (quotations omitted). A substantial burden includes situations " 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief." Id.

-10-

If a plaintiff meets this burden, the defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Plaintiff has not alleged how the restrictions imposed by the prison placed a **substantial** burden on the exercise of his religious beliefs. Although he has alleged he was not able to attend chapel services, speak with the chaplain on a regular basis, or obtain a Bible immediately, he has not explained how these incidents substantially burdened his ability to practice his religion.

Plaintiff has not stated a claim under RLUIPA, and will be given leave to amend.

### D.     Linkage Requirement

In the event Plaintiff chooses to file an amended complaint, he should be aware that under § 1983, he must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

The statute clearly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S. Ct. at 1948. Since a government official cannot be held liable under

a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his or her own individual actions. Id. at 1948. In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

IV.     **CONCLUSION AND ORDER**

The Court finds that, as pled, Plaintiff's Complaint fails to state a claim upon which relief could be granted. The Court will provide Plaintiff time to file an additional amended complaint to address the potentially correctable deficiencies noted above. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff should read this Screening Order carefully before preparing his amended complaint.

In his amended complaint, Plaintiff must demonstrate that the alleged incident resulted in a deprivation of his constitutional rights. Iqbal, 129 S. Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given an opportunity to amend, it is not for the purposes of adding new claims. Plaintiff should focus his amended complaint on the violations of the Equal Protection Clause, First Amendment and RLUIPA.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir.

1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

      Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty days;

2. Plaintiff shall caption the document "Amended Complaint" and refer to the case number 1:11-cv-1915-MJS (PC); and

3. If Plaintiff fails to comply with this Order, this action will be dismissed for failure to prosecute and failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   April 20, 2012          /s/ *Michael J. Seng*
                                                  UNITED STATES MAGISTRATE JUDGE