UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT ADLER,<br><br>                    Plaintiff,<br><br>        v.<br><br>FERNANDO GONZALEZ, et al.,<br><br>                    Defendants.<br>_____/ | CASE NO.   1:11-cv-1915-LJO-MJS (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT ACTION PROCEED ON FIRST AMENDMENT AND RLUIPA CLAIMS AGAINST CERTAIN DEFENDANTS AND THAT REMAINING CLAIMS AND PARTIES BE DISMISSED<br><br>(ECF No. 8)<br><br>FOURTEEN-DAY OBJECTION DEADLINE |

Plaintiff Brent Adler ("Plaintiff") is a state prisoner proceeding pro se in and forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff initiated this action on November 17, 2011. (Compl., ECF No. 1.) Plaintiff's original Complaint was dismissed, with leave to amend, for failure to state a claim. (ECF No. 7.) On May 23, 2012, Plaintiff filed a First Amended Complaint (Am. Compl., ECF No. 8) which is now before the Court for screening.

///
///

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

## II. PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, currently housed at Centinela State Prison, was at California Correctional Institution ("CCI") at Tehachapi, California, when and where all of the events alleged in his First Amended Complaint occurred. (Am. Compl. at 2.) Plaintiff brings claims for violation of his rights under the First Amendment, The Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act against: 1) F. Gonzalez, warden at CCI from November 2008 to December 2010, 2) M. Stainer, acting warden as of January 2011, 3) D. Zanchi, captain on Facility IV-A from 2008 to June 2009, 4) M. Bryant, captain of Facility IV-A from July 2009 to June 2010, 5) J. Lundy,

current captain of Facility IV-A, 6) C. Schuyler, Facility IV-A lieutenant, 7) K. Holland, chief deputy warden, 8) M. Carrasco, associate warden and later associate warden of business services, 9) J. Negrete, associate warden in 2009, 10) T. Steadman, associate warden from 2010 to the present, 11) C. Holmstrom, appeals examiner at CDCR in 2010, and 12) John Does # 1-10, a group that includes correctional supervisors, officers, and other CDCR employees.

Plaintiff's First Amended Complaint, like his original Complaint, presents an extensive list of alleged restrictions placed on his ability to practice his Catholic religion. Plaintiff's allegations include the following:

Plaintiff is Catholic. (Am. Compl. at 4.) From November 5, 2008 to January 31, 2011, Plaintiff was unable to attend group worship, take sacramental bread and wine, participate in confession, attend religious services, celebrate religious holidays, follow a religious diet when necessary, obtain spiritual advice, consistently maintain ownership of a Bible, or secure a rosary. (Id.)

For the first part of this time period, Plaintiff was in Ad-Seg. (Am. Compl. at 4.) Plaintiff was there from November to December of 2008. (Id.) In Ad-Seg, Plaintiff was confined to his cell for the entire day and denied the ability to have religious visitations and literature. (Id. at 5.) Warden Sullivan approved the Ad-Seg program that denied Plaintiff's religious needs; Defendants Doe #1 and #2 prevented Plaintiff from having religious visitations and literature; and Defendant Zanchi supervised Defendants Does #1 and #2. (Id.) Defendants Carrasco, Holland, and Gonzalez ran the prison. (Id.) All of these Defendants were aware of the inability of inmates to obtain religious services in Ad-Seg, but refused to rectify the problem. (Id.)

Plaintiff was moved into general population in December 2008, but this area was on a modified program ("PSR") and inmates of all races were restricted to "in-cell" religious services. (Am. Compl. at 5.) Defendants Gonzalez, Holland, Steadman, Bryant, and Schuyler, Lundy, Stainer, and Carrasco instituted the various PSRs. (Id. at 6, 13, 16, 17.) Defendants Does #3 and #4 did not fulfill their supervisory obligations to ensure that

1  inmates had access to religious items and services. (Id. at 9.) Defendants Schuyler,
2  Bryant, Zanchi, Lundy, Doe #5, and Doe #6 were responsible for Facility IV-A, and also
3  failed in their duty to ensure that inmates had access to religious services. (Id. at 10, 18.)
4  Defendants Gonzales, Holland, Carrasco, Negrete, Stainer, and Steadman failed to enure
5  that Plaintiff's religious needs were met. (Id.)

6        Due to the restrictions, Plaintiff could not confess his sins, participate in group
7  prayer and discussion, take communion, speak with a spiritual advisor, or receive a Bible
8  or rosary. (Am. Compl. at 6.) There was no valid penological reason for these restrictions
9  because the PSRs that created the restrictions were in response to threats that were
10 eliminated prior to Plaintiff's arrival in the program. (Id.) During the time he was in this
11 modified program, numerous PSRs were issued curtailing Plaintiff's ability to satisfy his
12 religious requirements. (Id. at 6-7.) Even when there were no PSRs in place, there were
13 no religious services held. (Id. at 7.)

14       Plaintiff, in his capacity as chairman of the Men's Advisory Council ("MAC") and
15 through inmate appeals, informed Defendants Gonzalez, Holland, Carrasco, Negrete,
16 Schuyler, and Bryant that inmates were not receiving normal religious services. (Am.
17 Compl. at 10, 15.) The MAC discussed the restrictions with Defendants Gonzalez,
18 Holland, Carrasco, Negrete, Zanchi, Bryant, Lundy, Schuyler, Doe #4, and Doe #5. (Am.
19 Compl. at 11, 17.)

20       Defendants Bryant, Holland, and Holmstrom reviewed and denied Plaintiff's appeal
21 regarding his inability to have his religious needs met. (Id. at 18, 19.) Defendants
22 Gonzalez, Lundy, Schuyler, and Holmstrom's failure to act on Plaintiff's appeal caused
23 Plaintiff to suffer from an irreparable injury. (Id. at 19.)

24       Defendants Gonzalez, Holland, Carrasco, Negrete, Steadman, Zanchi, Bryant,
25 Lundy, Schuyler, and Holmstrom knew they were denying Plaintiff's access to religious
26 services. (Am. Compl. at 19.)

27       Plaintiff asks for a declaratory judgment, $100,000 in compensatory damages,
28 nominal damages, punitive damages, costs, and a trial by jury.

### III. ANALYSIS

#### A. 42 U.S.C. § 1983

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

#### B. 42 U.S.C. § 1983 Linkage and Doe Defendants

To state a claim under § 1983, Plaintiff must demonstrate that each individually named defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 676. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 676-677.

Plaintiff attributes no wrongful actions to, and sates no claims against, Defendant Does #7-10. Similarly, he complains about Defendant Doe #3 only in his supervisory capacity. Nothing suggests any of these Defendants personally violated, or knowingly directed a violation of, Plaintiff's constitutional rights. Fed.R.Civ.P. 8(a). Accordingly,

1  Each of them should be dismissed.

2  As discussed below, Plaintiff has stated claims against Defendant Does # 1, 2, 4,
3  5, and 6. "It is permissible to use Doe defendant designations in a complaint to refer to
4  defendants whose names are unknown to plaintiff. Although the use of Doe defendants
5  is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe
6  defendants creates its own problem; those persons cannot be served with process until
7  they are identified by their real names." Robinett v. Correctional Training Facility, 2010
8  WL 2867696, at *4 (N.D.Cal. July 20, 2010). Thus, Plaintiff is advised that these
9  Defendants cannot be served by the United States Marshal until Plaintiff has identified
10 them as actual individuals and amended his complaint to substitute their actual names.
11 The burden remains on Plaintiff to promptly discover the full names of Doe Defendants.
12 Id.

13 **C.     Equal Protection**

14 The Equal Protection Clause of the Fourteenth Amendment requires that persons
15 who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center,
16 Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two
17 ways. The first method requires a plaintiff to show that the defendant has intentionally
18 discriminated against the plaintiff on the basis of the plaintiff's membership in a protected
19 class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Under this
20 theory of equal protection, the plaintiff must show that the defendant's actions were a
21 result of the plaintiff's membership in a suspect class, such as race, religion, or alienage.
22 Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

23 Here, Plaintiff makes conclusory statements to the effect that he "was intentionally
24 treated differently from similarly situated prisoners who are Catholic with no rational basis
25 for the difference in treatment." (Am. Compl. at 10.) However, he provides no factual
26 allegations to support such a claim and there is nothing in the pleading to suggest it is
27 based upon anything other than speculation and surmise by Plaintiff. Indeed, the facts
28 alleged reflect that, the orders at issue affected inmates of all religions. Plaintiff has failed

1  to state a claim under this equal protection theory and will not be given leave to amend.

2  Plaintiff could make an equal protection claim under the second theory by showing
3  that similarly situated individuals were intentionally treated differently without any rational
4  relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562,
5  564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); SeaRiver Mar.
6  Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal
7  protection claim under this theory, a plaintiff must allege that: (1) he is a member of an
8  identifiable class; (2) he was intentionally treated differently from others similarly situated;
9  and (3) there is no rational basis for the difference in treatment. Village of Willowbrook,
10 528 U.S. at 564.

11 In his claim against Defendants, Plaintiff has alleged membership in an identifiable
12 class, i.e., a member of the Catholic religion. Again, however, he fails to meet the other
13 prerequisites of such a claim. Plaintiff has not alleged that he was intentionally treated
14 differently from others similarly situated or that there was no rational basis for any of the
15 treatment he received. At most, he suggests Catholic inmates at some institutions may
16 be treated differently than those at other institutions. But to suggest that all members of
17 a certain class must be treated equally regardless of, for example, the security
18 classification of the prison or their security needs at a particular point in time, is to ignore
19 the difference, for example, between minimum and maximum security prisons and the
20 need to react differently in response to legitimate penal needs. Plaintiff has failed to state
21 a Fourteenth Amendment equal protection claim against Defendants Gonzalez, Holland,
22 Carrasco, Negrete, Steadman, Zanchi, Bryant, Lundy, Schuyler, Holmstrom, and Does
23 #1-6.

24 Plaintiff previously was advised of the deficiencies in his pleadings in this regard
25 and of what had to be pled to state a cognizable claim. He has failed to correct those
26 deficiencies and supply the missing information. No useful purpose would be served in
27 repeating the previously given advise and giving another opportunity to correct the same
28 errors. Leave to amend these claims should be denied.

### D.     First Amendment

Plaintiff alleges that the failure to allow him to attend group worship, take sacramental bread and wine, participate in confession, attend religious services, celebrate religious holidays, follow a religious diet when necessary, obtain spiritual advice, consistently maintain ownership of a Bible, or secure a rosary violated his First Amendment right to freedom of religion.

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979). Restrictions on access to "religious opportunities"-whether group services, chapel visits, or meetings with religious advisers-must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Certainly, prisons are allowed to place a variety of restrictions on activities, including even religious worship, for security purposes and other legitimate penological reasons. See Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). However, denial of all access to religious worship opportunities can violate the First Amendment. Id.

Plaintiff has alleged facts that satisfy the Turner criteria for stating a First Amendment claim. As to the first Turner factor, Plaintiff has alleged the absence of any

valid security reasons for the different PSRs or for denying Plaintiff to ability to practice his religion for over two years.  As to the second prong, it appears that since he was confined to his cell, he was provided no alternative means to exercising his required religious obligations.  Plaintiff has alleged sufficient facts to satisfy the third prong because Plaintiff's allegations that there were breaks between PSRs, i.e., periods of lesser security concern, suggests there were times when the guards could have allowed inmates to participate in religious activities without the same significant impact on guards and other inmates.  Again, since Plaintiff was confined to his cell, ready alternatives were not available and he has alleged sufficient facts to satisfy the fourth prong.  Plaintiff has successfully alleged a First Amendment claim.

Plaintiff alleges that Defendants Negrete, Zanchi, Carrasco, Holland, Gonzalez, Steadman, Bryant, Schulyer, Lundy, Stainer, Holmstrom, Doe #1, Doe #2, Doe #4, Doe #5, and Doe #6 approved the PSRs, created prison policies, and/or failed to ensure that inmates had access to religious services.  Plaintiff has stated a First Amendment claim against these Defendants.  However, as noted, the Court cannot order service on Defendant Does until Plaintiff discovers their names.

### E.     RLUIPA

Plaintiff also makes a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1).  Plaintiff bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  A "substantial burden" is one that is "oppressive to a significantly great extent." Id. at 995 (internal quotations omitted).  It "must impose a significantly great restriction or

onus upon [religious] exercise." Id. (quotations omitted). A substantial burden includes situations " 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief." Id.

If a plaintiff meets this burden, the defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Plaintiff has alleged the restrictions placed a substantial burden on the exercise of his religious beliefs. Plaintiff was unable to attend chapel services, speak with the chaplain on a regular basis, or obtain a Bible immediately. As a result, he could not seek salvation of his grandfather's soul, was unable to pray the rosary, did not feel connected to his religion, could not seek confession, and ultimately became concerned that he would be sent to purgatory. Defendants Gonzales, Holland, Carrasco, Negrete, Steadman, Zanchi, Bryant, Lundy, Schulyer, Holmstrom, Doe #1, Doe #2, Doe #4, Doe #5, and Doe #6 approved the PSRs, created prison policies, and/or failed to ensure that inmates had access to religious services. Plaintiff has stated a RLUIPA claim against these Defendants. Again, however the Court cannot order service on Defendant Does until Plaintiff discovers their names.

### F. Declaratory Relief

Finally, in addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (quotation marks omitted). Therefore, this action properly proceeds as one for damages only.

### IV.   CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiff's First Amended Complaint has a stated cognizable

claim against Defendants Negrete, Zanchi, Carrasco, Holland, Holmstrom, Gonzalez, Steadman, Bryant, Schulyer, Lundy, Stainer, Doe #1, Doe #2, Doe #4, Doe #5, and Doe #6 for violating his rights under the First Amendment.  It also states a cognizable claim under RLUPIA against Defendants Gonzales, Holland, Carrasco, Negrete, Steadman, Zanchi, Bryant, Lundy, Schulyer, Holmstrom, Doe #1, Doe #2, Doe #4, Doe #5, and Doe #6.  However, it fails to state a Fourteenth Amendment equal protection claim against Defendants Gonzalez, Holland, Carrasco, Negrete, Steadman, Zanchi, Bryant, Lundy, Schuyler, Holmstrom, and Does #1-6.  He has also failed to state any claims against Defendants Does #3, 7, 8, 9, or 10.

Plaintiff was previously provided with the legal standards applicable to his federal claims and given leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Further leave to amend as to the federal claims is not warranted.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action for damages proceed on Plaintiff's First Amended Complaint against Defendants Negrete, Zanchi, Carrasco, Holland, Holmstrom, Gonzalez, Steadman, Bryant, Schulyer, Lundy, Stainer, Doe #1, Doe #2, Doe #4, Doe #5, and Doe #6 for violating Plaintiff's rights under the First Amendment and against Defendants Gonzales, Holland, Carrasco, Negrete, Steadman, Zanchi, Bryant, Lundy, Schulyer, Holmstrom, Doe #1, Doe #2, Doe #4, Doe #5, and Doe #6 for violating Plaintiff's rights under RLUIPA;

2. Plaintiff's Fourteenth Amendment equal protection claim against Defendants Gonzalez, Holland, Carrasco, Negrete, Steadman, Zanchi, Bryant, Lundy, Schuyler, Holmstrom, and Does #1-6, be dismissed with prejudice, for failure to state a claim under § 1983;

3. Plaintiff's claim for declaratory relief be dismissed, with prejudice, for failure to state a claim; and

4. Defendants Does #3, 7, 8, 9, and 10 be dismissed from this action based on

Plaintiff's failure to state any claims against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   May 29, 2013                         /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE