UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT ADLER,<br><br>        Plaintiff,<br><br>    v.<br><br>F. GONZALEZ, et al.,<br><br>        Defendants. | CASE NO. 1:11-cv-1915-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF No. 64)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

Plaintiff is a former state prisoner who initiated this civil rights action *pro se* and *in forma pauperis* on November 17, 2011. (ECF No. 1.) Plaintiff since has been released from prison and obtained counsel. (ECF Nos. 36 & 51.) This action proceeds against Defendants on Plaintiff's First Amendment Free Exercise claim. (ECF Nos. 37, 38, 59, 62.)

On April 10, 2015, Defendants filed a motion for summary judgment. (ECF No. 64.) Plaintiff filed his opposition on June 13, 2015. (ECF No. 73.) Defendants did not file a reply.

**I.    LEGAL STANDARD - MOTION FOR SUMMARY JUDGMENT**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash.

Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). However, "conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Angle v. Miller, 673 F.3d 1122, 1134 n.6 (9th Cir. 2012) (citing Soremekun, 509 F.3d at 984).

## II. FACTUAL SUMMARY

The Court finds the following facts to be undisputed:

The events giving rise to this lawsuit occurred when Plaintiff was housed at the California Correctional Institute in Tehachapi (CCI).  Plaintiff was initially placed on CCI's Facility IVA in November 2008.  He was transferred from CCI to Wasco in February 2011.

Plaintiff holds sincere beliefs in Catholicism.

Defendants Gonzalez, Stainer, Holland, Carrasco, Negrete, Steadman, Zanchi, Bryant, Lundy, and Schuyler were all administrators at CCI or correctional staff on Facility IVA during the period of Plaintiff's incarceration at CCI. Chaplain Davis was the Catholic chaplain at CCI at all times relevant to this lawsuit.

Between November 2008 and February 2011, CCI was often placed on "modified programs" because of threatened and actual assaults on staff or inmates.  When a modified program is put in place, the Warden prepares a "Program Status Report" (PSR), which specifies which inmate programs are restricted.

PSRs frequently restrict chapel access and limit religious services to "in-cell" only.

## III. PARTIES' ARGUMENTS

### A. Defendants' Arguments

Defendants deny that Plaintiff's Free Exercise rights were violated.  They argue that Plaintiff "did not avail himself of the opportunities to practice his religion" while incarcerated at CCI.   Specifically, they assert that Plaintiff neither made his religious affiliation known to Chaplain Davis, nor requested to be put on the list of inmates to attend Catholic services. Even though Chaplain Davis regularly provided cell-front spiritual advice to the inmate in the cell adjacent to Plaintiff's, and had frequent

3

conversations with Plaintiff, Plaintiff never requested spiritual advice for himself, made requests to attend chapel, or discussed his Catholic beliefs. Davis did not maintain lists of inmates who attended Catholic chapel services from November 2008 through February 2011. His record of attendees at one Catholic retreat in February 2010 does not include Plaintiff's name. (ECF No. 66, at 3.)

Catholic services were held weekly, albeit at varying times, when CCI was operating on a normal program. After inmates voiced concern in May 2010 about insufficient chapel access, Defendants implemented a schedule under which Catholic services were held each week at the same time. A July 22, 2010 memorandum from Defendant Gonzalez sets a schedule for religious services, including Catholic mass, and instructs interested inmates to "submit a request for interview and be placed on the chaplain's religious list prior to being called for religious services." (ECF No. 67-3, at 6.)

When the prison went on a modified program, no group services were held, and inmates could only obtain cell-front spiritual advice.

To the extent Plaintiff received irregular access to group services it was justified by the modified program status. The chapel is typically unsupervised by correctional staff, so suspending services during times of unrest helps to prevent "inmates from planning additional attacks… or ways to interfere with the investigation." (ECF No. 64, at 7.)

**B. Plaintiff's Arguments**

Plaintiff disputes most of Defendants' assertions. He states that he filed numerous grievances protesting the absence of religious programming, and that he raised the issue regularly in his role as chairman of the Mens' Advisory Council (MAC). This statement is corroborated by meeting minutes from a MAC meeting with the

4

Warden from July 2010, which indicate that Plaintiff brought up the lack of regular chapel services and requested that a set schedule be put in place. (ECF No. 67-3, at 10-11.) Defendants "acted as if it was not a big deal that services weren't being r[u]n," paid "lip service" to the necessity of implementing a religious schedule, and never made any changes. Plaintiff denies that religious services were held at all, much less on a weekly basis, prior to the schedule that Warden Gonzalez put together in July 2010. Even after the schedule was set, services continued to be held irregularly. He was able to attend Catholic mass only twice during his time at CCI.

Plaintiff asserts he informed Chaplain Davis of his Catholic faith, requested inclusion on the Catholic services list, and asked Davis why Catholic services were not being held on Facility IVA. Davis told him Defendants were punishing the facility for an attack on staff. Plaintiff denies that Davis regularly came to Plaintiff's neighbor's cell to provide advice.

Plaintiff further alleges that Defendants' restrictions on religious services were more drastic and long-lasting than necessary to preserve prison security. No Catholic inmates were responsible for the security threats that led to modified programs, so staff had alternatives to ending all group services for all religious denominations. He denies that he had access to cell-front spiritual guidance during modified programming.

**IV.   DISCUSSION**

**A. Legal Standard – Free Exercise Clause**

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or

retracted if required to "maintain [ ] institutional security and preserv[e] internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 549 (1979). Restrictions on access to "religious opportunities," whether group services, chapel visits, or meetings with religious advisers, must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89-90 (1987); see also Beard v. Banks, 548 U.S. 521 (2006); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc).

Certainly, prisons are allowed to place a variety of restrictions on activities, including religious worship, for security purposes and other legitimate penological reasons. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). However, denial of all access to religious worship opportunities can violate the First Amendment. Id.

**B. Analysis**

Taking Plaintiff's allegations as true, Plaintiff has raised a triable issue of fact as to whether his First Amendment free exercise rights were violated at CCI during both normal and modified programming.

There are clear factual disputes, irresolvable on the evidence before the Court, as to whether weekly Catholic services were available at CCI when the prison was on a normal program and whether Plaintiff made any attempt to participate in such services. See McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987). Plaintiff asserts that he

6

requested numerous times to participate in group services, that his requests were not taken seriously, and that Catholic mass was only offered twice in the two years he spent at CCI.  Defendants deny these assertions. Resolution of the dispute favorably to Plaintiff could warrant judgment on his First Amendment claim with respect to periods of normal programming at CCI.  See McElyea, 833 F.2d at 198 (denial of Sabbath services was a substantial burden); Rouser v. White, 630 F.Supp.2d 1165, 1188 (E.D. Cal. 2009) (defendants' denial of chapel access and religious items gave rise to Free Exercise violations).

      The same is true for the same reasons with regard to the periods of modified programming.  As noted, security concerns may justify restriction or temporary suspension of religious programming. See Pierce, 526 F.3d at 1209.  Moreover, prison officials are entitled to "wide-ranging deference in adopting policies that are needed to preserve internal order and security," Noble v. Adams, No. 1:03-CV-5407 2008 WL 895984, at *13 (E.D. Cal. Mar. 31, 2008)(citing Caldwell v. Miller, 790 F.2d 589, 596 (7th Cir. 1986).  However, it is not appropriate for courts to "defer completely to prison administrators." Noble, 2008 WL 895984, at *13.  Here, Plaintiff contends that officials at CCI did not tailor program restrictions to the groups of inmates who posed threats, and that they suspended religious programming for far longer than any purported threat continued.  He contends that cell-front spiritual advice was not available as an alternative.  Without more details about the individual periods of modified programming, the court cannot determine whether this allegedly complete ban on group religious activities at CCI "was reasonably adapted to achieving an important correctional goal." Walker v. Sumner, 917 F.2d 382, 386 (9th Cir. 1990)(citing Caldwell, 790 F.2d at 598-599.) Therefore, Defendants' assertions that the inmate assaults justified "a total ban on

7

all group religious services [during modified programming] and was reasonably necessitated by security considerations, is conclusory, and hence, an insufficient basis for summary judgment." Walker, 917 F.2d at 386.

## V. QUALIFIED IMMUNITY

"A state officer is not protected by qualified immunity where he or she has violated a clearly established constitutional right." Phillips v. Hust , 588 F.3d 652, 657 (9th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was not unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

Here, the Court is not able to determine on the evidence submitted whether Defendants are entitled to qualified immunity regarding alleged deprivations of Plaintiff's rights during either normal or modified programming.  The right, subject to Turner, of inmates to exercise their sincerely held religious beliefs by engaging in group worship is well established.  See McElyea, 833 F.2d at 198; Rouser, 630 F.Supp.2d at 1188. Similarly, while security concerns may justify some restrictions or modifications to inmates' access to religious services, the unconstitutionality of a total ban on religious services is clear.  See Pierce, 526 F.3d at 1209.  Here, there is a factual dispute as to whether Defendants completely inhibited Plaintiff's access to mass and personal spiritual guidance for over two years. Taking as true Plaintiff's assertion that his access to religious services was denied, no reasonable correctional official could believe such a total ban was constitutional.

## VI. CONCLUSION & RECOMMENDATION

The Court finds that Defendants have not met their burden of showing an absence of disputed facts regarding whether Plaintiff's First Amendment rights were

violated.  In addition, the Court finds that Defendants are not entitled to qualified immunity.  Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment (ECF No. 64) be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   June 30, 2015              /s/ *Michael J. Seng*
                                                                                 UNITED STATES MAGISTRATE JUDGE